

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

September 12, 2002

The Honorable Warren Chisum
Chairman
Committee on Environmental Regulation
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0553

Re: Whether a creating unit must review a development corporation's dissolution plan when the corporation is dissolving under article 5190.6, section 4A(k) of the Revised Civil Statutes, and related question (RQ-0527-JC)

Dear Representative Chisum:

You ask about the City of Pampa's (the "City") role in dissolving the Pampa Economic Development Corporation (the "PEDC"), which voters have decided by election to dissolve under article 5190.6, section 4A(k) of the Revised Civil Statutes.[1] *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(k) (Vernon Supp. 2002). In particular, you question whether the PEDC's dissolution plan, "including, but not limited to, the terms of the sale of assets," is subject to the City's approval. Request Letter, *supra* note 1, Attachment at 1. Because a municipality that has created an economic development corporation has general authority to supervise and control the corporation, we conclude that the PEDC's dissolution plan must be reviewed by the City. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, §§ 21, 23(a)(12) (Vernon Supp. 2002). Significantly, however, a creating municipality, or creating "unit," may not prevent an economic development corporation that is dissolving pursuant to section 4A(k) from accomplishing its statutory duty to "dispose of its assets and apply the proceeds to satisfy [its] obligations." *Id.* § 4A(k); *see id.* § 2(13) (defining "unit" to include city that "may create and utilize a corporation").

You also ask whether the PEDC may establish "a reserve account . . . to meet future financial commitments after" it has paid its outstanding obligations. Request Letter, *supra* note 1, Attachment at 3. We assume, by the term "reserve account," you refer to an account like an escrow account. *See* BLACK'S LAW DICTIONARY 565 (7th ed. 1999) (listing "reserve account" as synonym for "escrow"). We conclude that neither article 5190.6 nor the Non-Profit Corporation Act, chapter 9 of the Revised Civil Statutes, precludes the PEDC from establishing an escrow account as a way of satisfying its

---

[1]*See* Letter from Honorable Warren Chisum, Chair, Committee on Environmental Regulation, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Mar. 25, 2002) (on file with Opinion Committee) [hereinafter Request Letter]; *see also* Letter from Don R. Lane, Attorney at Law, Pampa, Texas, to Honorable Warren Chisum, Texas House of Representatives at 2-3 (Mar. 22, 2002) (attachment to Request Letter) (on file with Opinion Committee) [hereinafter Attachment].

obligations. *See* TEX. REV. CIV. STAT. ANN. ch. 9 (Vernon 1997), art. 5190.6 (Vernon 1987 & Supp. 2002).

According to facts you provide, City voters elected to dissolve the PEDC on November 6, 2001. *See* Request Letter, *supra* note 1, Attachment at 1. The PEDC, now in the process of dissolving, has "several notes payable relating to projects" it had funded prior to the election; various assets, including notes receivable, a commercial building subject to a lease with an option to purchase, a section of land that the PEDC purchased for a minimal sum from Celanese Ltd.,[2] a 213-acre tract of land, and some personal property. *See id.* One PEDC project may have possible future financial obligations that "may accrue because of increased employment criteria after all of the [PEDC's] indebtedness . . . is satisfied." *Id.*

Based on these facts, you ask two questions:

> 1. Does the City . . . , as the creating unit, have approval authority over the plan of dissolution of the PEDC including, but not limited to, the terms of the sale of assets?

> 2. May a reserve account be established to meet future financial commitments after the outstanding obligations have been paid?

*Id.* at 1, 3. Because the PEDC is a development corporation established under article 5190.6, section 4A of the Revised Civil Statutes, we begin by setting out article 5190.6's relevant provisions. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A (Vernon Supp. 2002); *accord* Tex. Att'y Gen. LO-97-061, at 1.

Article 5190.6, the "Development Corporation Act of 1979" (the "Act"), *see* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 1 (Vernon 1987), permits a municipality, county, or district (a "unit") to create an industrial development corporation generally to promote and develop business and commercial enterprises in the area on the unit's behalf. *Id.* §§ 3, 4(a) (Vernon Supp. 2002). Provisions generally applicable to an industrial development corporation link the corporation closely to its creating unit. In particular, section 21 requires a creating unit to supervise the corporation: "The unit will approve all programs and expenditures of the corporation and annually review any financial statements of the corporation, and at all times the unit will have access to the books and records of the corporation." *Id.* § 21. And, while an industrial development corporation has "all of the rights, powers, privileges, authority, and functions given" to a nonprofit corporation incorporated under the Texas Non-Profit Corporation Act, article 1396 of the Revised Civil Statutes, to the extent that the Non-Profit Corporation Act does not conflict with the Act, its powers are "subject at all times to the [creating unit's] control." *Id.* § 23(a)(12). Indeed, the creating unit generally may

---

[2]Materials you sent with your request state that the PEDC paid $10 for the real property, but a copy of the contract between Celanese Ltd. and the PEDC indicates that the price was $1. *Compare* Request Letter, *supra* note 1, Attachment at 1 *with* Sales Contract between Celanese Ltd. and PEDC ¶ 3 (Nov. 18, 1999) (on file with Opinion Committee).

resolve to "terminate and dissolve the corporation" at "any time . . . in its sole discretion." *Id.* § 34 (Vernon 1987).

Section 4A, which was inserted into the Act in 1989, applies particularly to industrial development corporations created by a municipality "located in a county with a population of 500,000 or fewer; or [, in certain circumstances] . . . with a population of fewer than 50,000." *Id.* § 4A(a)(1)-(2) (Vernon Supp. 2002); *see* Act of May 27, 1989, 71st Leg., R.S., ch. 877, § 2, 1989 Tex. Gen. Laws 3871, 3871-73. "The corporation has the powers and is subject to the limitations of a corporation created under other provisions of this Act. To the extent of a conflict between this section and another provision of this Act, this section prevails." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(b)(1) (Vernon Supp. 2002). If a majority of the creating municipality's electorate authorizes the city to levy a sales-and-use tax to benefit the corporation, the municipality collects the tax and delivers "the proceeds to the corporation to use in carrying out its functions." *Id.* § 4A(d), (f). The corporation may be dissolved by a vote of the electorate:

> On petition of [ten] percent or more of the registered voters of the city requesting an election on the dissolution of the corporation, the governing body shall order an election on the issue at the next available uniform election date . . . . If a majority of voters voting on the issue approve the dissolution, the corporation shall continue operations only as necessary to pay the principal of and interest on its bonds and to meet obligations incurred before the date of the election and, to the extent practicable, shall dispose of its assets and apply the proceeds to satisfy those obligations. When the last of the obligations is satisfied, any remaining assets of the corporation shall be transferred to the city, and the corporation is dissolved. A tax imposed under this section may not be collected after the last day of the first calendar quarter beginning after notification to the comptroller by the corporation that the last of its obligations is satisfied.

*Id.* § 4A(k); *see also id.* §§ 34, 35 (Vernon 1987) (authorizing creating municipality to dissolve the corporation "[a]t any time . . . in its sole discretion" and authorizing the corporation to dissolve itself when it has fulfilled its purpose); *cf. id.* § 4B(*o*) (Vernon Supp. 2002) (providing for dissolution of certain industrial development corporations in cities located in county with population of 750,000 or more, or with a population of 400,000 or more).

You ask whether a corporation's plan of dissolution, including the terms of sales of assets, must be reviewed and approved by the creating unit. *See* Request Letter, *supra* note 1, Attachment at 1. This issue requires us to consider whether a development corporation's specific duty under section 4A(k) to "dispose of its assets and apply the proceeds to satisfy [its] obligations" conflicts with the creating unit's duty to control the development corporation under article 5190.6's general provisions. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(b)(1) (Vernon Supp. 2002) (providing that, to extent section 4A conflicts with another provision of article 5190.6, section 4A prevails).

We conclude that the two duties do not conflict. Rather, the duties may be harmonized so that the creating unit retains control over the dissolution, although it may not thereby interfere with the industrial development corporation's duty to dispose of its assets and satisfy its obligations.

A creating unit retains control and responsibility over the corporation. *Cf. Gaut v. Amarillo Econ. Dev. Corp.*, 921 S.W.2d 884, 887 (Tex. App.–Austin 1996, no writ) (per curiam) (stating that industrial development corporation's "broad powers" are subject to creating unit's control). Specifically, a development corporation is "subject at all times" to the creating unit's control. TEX. REV. CIV. STAT. ANN. art. 5190.6, § 23(a)(12) (Vernon Supp. 2002); *see also id.* § 34 (Vernon 1987) (authorizing creating unit to dissolve corporation); HOUSE COMM. ON WAYS & MEANS, BILL ANALYSIS, Tex. S.B. 971, 71st Leg., R.S. (1989) (stating that industrial development corporation would be within city council's "total control").

Nevertheless, a creating unit may not use its duty to review and approve to interfere with the development corporation's duty to dispose of its assets and to satisfy its obligations. Section 4A(k) of the Act requires a corporation that is dissolving under that section "to the extent practicable, to dispose of its assets and apply the proceeds to satisfy [its] obligations." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(k) (Vernon Supp. 2002). Thus, the development corporation must dispose of its assets, at least to the extent necessary to satisfy its obligations. Moreover, the development corporation should dispose of its real property in exchange for a fair market value. *Cf.* Tex. Att'y Gen. Op. No. JC-0109 (1999) at 2 (stating that 4B development corporation may not sell property acquired with sales-and-use tax proceeds for less than the property's fair market value).

In this way, both a creating unit's statutory duty and a development corporation's statutory duty are harmonized. Thus, for example, a creating unit may approve one means of disposing of a particular asset but not another, where both will allow the development corporation to satisfy its obligations, or the creating unit may disapprove of the development corporation's plans for disposing of a particular asset where the corporation can satisfy its obligations without disposing of the asset.

You ask next whether a "reserve" or escrow account may be established to meet the PEDC's "future financial commitments." Request Letter, *supra* note 1, Attachment at 3. You provide facts indicating that after the PEDC settles all of its other obligations and when it is otherwise ready to dissolve, it may have "one project" with "future financial commitments" that the PEDC may be unable to complete. *Id.* According to the City, the "future financial commitments are determinable since they are based on a fixed dollar amount on fixed numbers of increased employment." *Id.* Furthermore, you tell us, if the City were to continue to collect sales-and-use tax revenue under article 5190.6, section 4A(d) on behalf of the PEDC to pay future obligations, the amount of tax revenue "would far exceed the amount necessary to fund this future amount." *Id.*

Section 4A(k) permits a dissolving development corporation to "continue operations only as necessary to pay the principal of and interest on its bonds and to meet obligations incurred before the" dissolution election, and, "to the extent practicable," to "dispose of its assets and apply the proceeds to satisfy" its obligations. TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(k) (Vernon Supp. 2002). When the corporation has "satisfied" the last of its obligations, it must transfer "any

remaining assets" to the city, "and the corporation is dissolved." *Id.* A sales-and-use tax imposed to benefit the corporation under section 4A(d) "may not be collected after the last day of the first calendar quarter beginning after" the corporation notifies the comptroller that it has satisfied "the last of its obligations." *Id.*

The Texas Non-Profit Corporation Act, chapter 9 of the Revised Civil Statutes, to which an industrial development corporation is also subject to a certain extent, similarly requires a dissolving nonprofit corporation to pay, satisfy, and discharge all liabilities and obligations. *See* TEX. REV. CIV. STAT. ANN. art. 1396-6.02 (Vernon 1997); *see also id.* art. 5190.6, § 23 (Vernon Supp. 2002) (endowing corporation with all rights, powers, privileges, authority, and functions given to nonprofit corporation created under Texas Non-Profit Corporation Act except to the extent the Non-Profit Corporation Act is inconsistent with Act). Likewise, once a dissolving nonprofit corporation has paid, discharged, or made "adequate provision" for its liabilities and obligations, it must file articles of dissolution with the Texas Secretary of State. *Id.* art. 1396-6.05(A) (Vernon Supp. 2002); *accord* OFFICE OF THE SECRETARY OF STATE, CORPORATIONS SECTION, FORM NO. 603: ARTICLES OF DISSOLUTION NON-PROFIT CORPORATION (revised 9/99), *available at* http://www.sos.state.tx.us/corp/forms/603.pdf.

We conclude that neither the Act nor the Non-Profit Corporation Act preclude the PEDC from establishing an escrow account to meet calculable future financial obligations. Establishing such an account is one means by which a dissolving corporation may "satisfy" its obligations under section 4A(k). Once these obligations are satisfied, the corporation must notify the comptroller accordingly and must cease the collection of taxes "after the last day of the first [subsequent] calendar quarter." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(k) (Vernon Supp. 2002). Establishing an escrow account also is one "practicable" method by which the corporation may "dispose of its assets" and discharge its obligations. This conclusion appears to comport with the PEDC's Articles of Incorporation, which require the corporation, in the event of dissolution, to transfer ownership of its assets to the City after satisfying or "providing for the satisfaction of debts and claims." ARTICLES OF INCORPORATION OF PAMPA ECONOMIC DEVELOPMENT CORPORATION, INC. art. XII (Apr. 20, 1992). We assume that establishing an escrow account is consistent with the corporation's contractual obligations, as well.

## S U M M A R Y

An industrial development corporation that is dissolving under article 5190.6, section 4A(k) of the Revised Civil Statutes must submit its dissolution plan to the corporation's creating unit for its review and approval. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(k) (Vernon Supp. 2002). But the creating unit may not use its approval power to prevent the development corporation from performing its statutory duty to, "to the extent practicable, . . . dispose of its assets and apply the proceeds to satisfy" the corporation's obligations. *Id.* Neither article 5190.6 nor the Non-Profit Corporation Act preclude an industrial development corporation from establishing an escrow account to meet calculable future financial commitments.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee